Debrosse v. City of New York. May it please the Court, Counsel, my name is David Zellman. I represent Donald Debrosse. As argued in our briefs, there is a very clear and stark issue of fact in this case about whether Cheryl Williams identified Donald Debrosse as a shooter in this case. This case began, I believe, in 2009 when there was a shooting in the back of a restaurant. It was a crowded restaurant. There was adults seated all around the table. Ms. Cheryl Williams was 16 years old at the time. A young man that all of the adult witnesses identified as a teenager. There was about four identifications taken from adult witnesses. And Ms. Cheryl Williams, her description of the perpetrator was like of a 25-year-old individual. Police arrived. They created a complaint report. The complaint report said no witnesses. And several of these people were brought back to the precinct to view the photos. No identifications were made. Officers testified that they went to the hospital. And at that point, they developed a motive where there was, according to them, a stabbing related to this shooting that implicated my client. There was no DD-5 created for that interview of this motive witness. And they then sought to develop this 16-year-old witness as the perpetrator of this shooting. Their only witness in this case. My problem is that all of this testimony seems to me to be hearsay. And even though it might be a situation where if that evidence were in on the merits, then what you are trying to raise would have some support, I believe that we cannot do that with evidence that would not be admissible on the merits. And I don't know how you get out of that. All right. I'll explain. Number one, I want to explain the unique situation in a police misconduct case is that what the police say that the identification witness said is also hearsay. But it's admitted for a specific purpose to show that they had probable cause. There was an indictment. And so there is a presumption of probable cause. Again, I'd be with you if they had to show and they can't because their witnesses are also hearsay. But here you have the presumption of probable cause. And so the burden shifts to you. Fair enough. Now, we presented several different categories of non-hearsay information before the court. Number one, we brought this witness to a deposition. At her deposition, she denied seeing the shooter. At her deposition, she admitted to telling the police that she did not get a good look at the shooter. She also was brought to an independent source hearing before this case was brought, where she testified and the criminal court found that she did not have an independent source. And then she also testified pretty plainly that the police officers complied with her procedures. She denied that she was pressured in any way. And she did make an identification. She did not make identification. She could not recall if she made identification. She was equivocal on all of these points. She said they went along with procedure, but she has no idea what that procedure is. She's 16, Your Honor. She said things on both sides, but did she say anything, given that she said also the things that the presiding judge has said, that is sufficient for you to overcome a presumption? I mean, at most, she's been on both sides. And you might well call her yourself, and when she says those things, bring in the hearsay evidence to attack her credibility. But still, that isn't bringing it in her merits. It's attacking her credibility. And so you're still left with something. At her deposition, she could not recall if she even went to the grand jury. We don't have her grand jury testimony. We never were able to receive it. But her statement at her deposition that she did not see the shooter, is that not sufficient to create an issue of fact in this case? Isn't that non-hearsay testimony sufficient to create an issue of fact? With absolutely no other evidence whatsoever. There were several adult witnesses at the table where this shooting happened. The detective ignored all of them, and went straight to this 16-year-old girl, and here we are, trying to piece together what happened four years ago. Sorry, I'm not sure I understand. Let's say we have a hypothetical case in which a witness has said to the police officers, that man grabbed my purse and ran away with it. And if you want to add to it, she testified in the grand jury, that man grabbed my purse and ran away with it. You're saying that if on a deposition, one elicits from her, I did not see the person who grabbed my purse, that that undoes, that creates a question whether the police officers had probable cause? If there is no evidence contradicting that she said to the police officers, that man stole my purse. That's exactly the issue in this case. She doesn't remember saying any of these things to the police. The police say that she said this. Remember, she's not a victim, she's just a witness. But she doesn't remember saying any of this. We deposed her. We asked her, did you identify anybody at a lineup? She said, maybe. She's brought to an independent source hearing. He says, the judge finds that she has no ability. The question that you put... But you have a grand jury indictment. No question. And that creates a presumption. All that you are saying might be enough if the question was before, was, there was not, or so on. But we do have this rule that because we don't know what went on before the grand jury, that where there is a grand jury indictment, that is enough for probable cause. And you can only attack it on the basis of fraud, on the basis of very powerful, limited things. So what you are before us, understandably, given the situation, and given the hearsay, trying to show, is something that I'm not sure you have the evidence. This court in Cox, this court in Boyd, allowed the plaintiff to proceed to trial despite the fact that there was a grand jury indictment. Our case is absolutely no different. We had a judge review the grand jury minutes. She wrote an opinion that they were utterly unremarkable. We don't know. We asked Ms. Williams if she actually testified at a grand jury. She couldn't recall. If there was a grand jury testimony, all the officers admit, it was based only on this 16-year-old's identification of the plaintiff. That's it. There was nothing else. Then she comes to court, and she says, I didn't see the shooting. She goes to the criminal court, and the criminal court observes that she had an insufficient ability to view the shooting. We have sufficient evidence before the court to rebut the grand jury presumption because it was based on so little. The only thing that it was . . . She doesn't testify that I didn't tell the police I saw the shooting. She does testify that I told the police that I didn't get a good look at the shooter. That's what she said. And we asked her, did you go to a lineup? Were you sure that this was the person? She said it was maybe. Completely insufficient evidence that the officer's testimony, in contrast, was she was a 100 percent confident witness in this case. You've reserved some rebuttal time. Good morning. May it please the court, my name is Scott Shore. I'm here on behalf of the detectives Gaynor and Winters. Because plaintiff's speculation and conjecture failed to create a fact issue for trial, this court should affirm the order dismissing his most recent malicious prosecution and fair trial claims on summary judgment. With respect to the malicious prosecution claim, the plaintiff did not rebut the presumption of probable cause that arose from the grand jury indictment. My adversary just cited Cox from the Eastern District of New York, not this court. Cox was a completely different case where the reviewing judge determined practically sua sponte that there was legally insufficient evidence for an indictment. And under those circumstances, an indictment does not give rise to the presumption. Here, that didn't happen. Here, there was legally sufficient information for the indictment, and later on, there were suppression rulings that meant that the prosecution was unable to proceed with the prosecution because it couldn't establish DeBras' guilt beyond a reasonable doubt. That does not vitiate the presumption whatsoever. Also, the fact that the Wade hearing and the suppression hearing resulted in the suppression of the identification evidence doesn't retroactively invalidate the probable cause the police had for initiating this prosecution. That's what this court said in Restivo. Judge Livingston, I believe you were on that panel in Restivo. The plaintiff says with great certainty that Ms. Williams... What does it take to overcome the presumption of probable cause that arises from the indictment? Well, Judge Calabrese said correctly that it needs to be something extreme. It needs to be evidence of fraud, fabrication, proven fabrication of evidence could do it. But here, all plaintiff is relying on is fragments of deposition testimony that he's tried to twist into solid assertions of fact, and that's just not what they are. Ms. Williams said clearly two things, that she was not coerced by the police detectives, and that the events were so traumatic that she was... If you had... If you could enter the testimony of the victim and of Ms. Williams' father that there was coercion, that there was fraud, that there was these things, that might well raise an issue of fact as to whether the grand jury had been, I don't say tampered with, but in effect, an inappropriate kind of thing. So that it isn't as if they don't have some stuff, but they don't have anything that comes in of the merits on it, and that's my problem. On a different record, Your Honor, perhaps that kind of evidence would be enough to create a fact issue sufficient to survive a summary judgment motion, but that's not what they have here. What they have from Ms. Williams are some very equivocal statements about whether she saw the guy and then was asked, well, who was the guy? And she said, I don't know. So that's not evidence that she said, I never saw the shooter. The detectives were very clear that she had a clear look at the shooter and his face, in fact, described him as having a mean face. And she also said that she wasn't sure what she told the police about her view of the shooter. That was equivocal as well. So the things that she was certain about were that she wasn't coerced and she would have remembered if she had been, and that the event was so traumatic, she was trying very hard to block the whole thing from her memory, which goes some way towards explaining why her statements two and a half, five years after the shooting were so different from what the police detectives wrote down in the DD-5s. Did she make any statements in discovery acknowledging that she, I gather she said things that contradict one another that are not necessarily consistent, but did she at any time say in discovery that she had pointed and made an identification in the lineup or in the photo ID? She, I don't recall that specifically, Your Honor, but the lineup identification sheet is in the record. And we have her deposition testimony where she's asked, is that your signature on the lineup identification document? And she says, yes, that is my signature. What appears on the sheet? That she identified Mr. DeBras as the shooter. What does it say? It says he was in position number five, I believe, and she circles number five as to identify the person. And she signed it. And she admitted at her deposition that was her signature. You surely aren't going to tell us that the fact that she said that he had a mean face adds anything much. I mean, you could say that about almost any panel of this Court. Not this panel. It goes to show that she had a good look at his face, which is why the police investigation here was a good, one reason why, it was a good police investigation. She was the only person who saw the shooting, who saw the shooter's face, and who was willing to tell the police what she saw. My adversary just said that other adult witnesses said that the shooter was younger. Well, the other adult witnesses didn't say that they had seen the shooter. They said that they saw someone in the backyard or running out of an alley or approaching the victim and then walking away, but never said that they saw that person with a gun, that that person was the shooter. So that doesn't do anything to contradict what Ms. Williams told the police detectives. Mr. Zellman also asked why all of these witnesses who didn't get a good look at the shooter were brought back to the precinct for further questioning. Detective Gaynor answered that it was a requirement. Chief Pulaski required detectives to do exactly that. With respect to the fair trial claim, I'd just like to make a couple of points that the sections of the dailies transcript that they rely upon do not say what they'd like them to say. He did not deny telling Detective Gaynor that he had an ongoing dispute with DeBras. In fact, several years after the shooting, his lawyer at the suppression hearing urged, that's the word he used, urged, this is City Exhibit O, the court to make a fact finding that DeBras told Gaynor about that ongoing dispute. And on the side of pages 49 to 51 of his deposition transcript, Dailius did not deny telling Gaynor that he suspected the plaintiff of shooting up his mother's house. Rather, he expressed his belief that the two shootings were related. And Mr. Dailius would like to contradict everything the detectives attributed to him during their interview. There's no dispute that that interview took place on September 12th. But Mr. Dailius says, well, I didn't wake up until several months after that. And I wasn't interviewed until police, until several months after that. So he has no recollection of the conversation during which he made the statements the police attributed to him. And therefore, he can't deny that he said the things that the police wrote down. And I should add that everything, he also, Mr. Zellman also would like to rely on other statements Mr. Dailius made. The detectives received motive information from Mr. Dailius's mother, Michael. It was not recorded in a DD-5, but there's no dispute that that conversation happened. And the information they later got from the victim, Peter Dailius, merely corroborated what they had from other sources, Michael Dailius and Detective Padra. Thank you. Just briefly, regardless of the grand jury presumption, and I do not believe it should apply in this case because there's direct evidence that there was no competent evidence before the grand jury. And if there was, it was extremely brief. And we have a much more detailed record here about exactly what Ms. Williams saw. What about the sheet at the identification? The reason that we're here today, Judge, is because the detective refused to allow the defense counsel an opportunity to come to the lineup. That's why the lineup was suppressed. You just said there was no competent evidence before the grand jury. Isn't the... We don't know what happened in front of the grand jury. None of us. Okay? You're not saying there was no competent evidence. You're just saying we don't know what was before the grand jury. We don't know. We had the judge review it. She said it was utterly unremarkable. I just want to move on for one point, Judge. There's a claim here that's not barred by any grand jury presumption, if your honors decide to bar the malicious prosecution by the grand jury presumption, and that is the fabrication of evidence. Unlike what counsel has just said, Mr. Peter Dailius, the victim in this case, has completely contradicted the officer's... Which meeting? If that were not so, then that argument might stand. But once you concede that the meeting took place, that means that every statement that he makes cannot be a direct contradiction of that. You mean the meeting between the victim and the police? Whatever month, 12th, the 12th of the month meeting, as opposing counsel mentioned. I don't know what meeting you're referring to, your honor. But what I can say is, does this give a police officer license to say and write in his report whatever he chooses that a witness wants to say? Because that's exactly what happened here. He met with Mr. Dailius at the hospital. It goes to whether a witness could deny the other things when he denied something occurred that is conceded to have occurred. I can't say, your honor, that I follow that, but let me just say this. There's no dispute that Mr. Dailius provides a detailed analysis of his discussion with officers in the hospital. He's the victim. They went to the hospital. They met with him. He explained how they tried to pressure him to circle his friend, Donald DeBrose, as the shooter in this case. He refused. He also explained that he had no dispute whatsoever with Donald DeBrose. Donald is his friend. He explained that at his deposition. We also included that in an affidavit. The officers, however, made a completely misleading DD-5, which says that Mr. Dailius said he had a dispute. Mr. Dailius testified that he couldn't recall a meeting with the detectives. No. He recalls it vividly. In his deposition, exactly the, it's in my briefs, exactly how he interacted, how they showed him pictures. The officers never mention in their DD-5 showing him pictures or asking him to identify Donald DeBrose or him refusing to identify Donald DeBrose. All of these things happen according to Mr. Dailius at the hospital. So I agree that there's no question that that meeting took place, but what Mr. Dailius said at those meetings was fabricated in the DD-5s. Not just as to whether or not Fruit Punch, who was a known friend of my client Donald DeBrose, was present. Not just whether or not Mr. DeBrose was involved in a prior shooting at Mr. Dailius' house, which Mr. Dailius denied and the officers attributed to him in the DD-5. So I don't, again, I can't say I understand exactly where Your Honor is going with that, but what I could say is there is clear under Garnett-Raschuti that officers cannot fabricate evidence. And the only evidence that a plaintiff can bring to bear against an officer riding in a DD-5 is to interview the person that was supposedly interviewed and ask them, did you tell the officer this? If you take that away from us, we're handcuffed. And there's nothing we can say or do to ever contradict what is in an officer's DD-5. Thank you. Thank you both for your argument. We'll take it under advisement.